IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSIRIUS GROUP, LLC, a Delaware limited
liability company,

        Plaintiff,

                                    Case No. 23-cv-10943
v.                               Hon. Denise Page Hood

IDEANOMICS, INC., a Nevada Corporation,

        Defendant.

---

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Gerald J. Gleeson II (P53568)
Sydney G. Rohlicek (P85655)
840 W. Long Lake Rd., Suite 150
Troy, Michigan 48098
(248) 879-2000
*Attorneys for Plaintiff*

Kurt A. O'Keefe (P30718)
1254 Woodbridge Street
Saint Clair Shores, MI  48080
(313) 962-4630
koklaw@gmail.com
*Attorney for Defendant*

---

## DEFENDANT'S OBJECTIONS TO MAGISTRATE JUUDGE'S REPORT AND RECOMMENDATION FOR ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT

    Defendant, through its attorney, Kurt O'Keefe, files the following Objections.

### CONCISE OBJECTIONS

1. The Magistrate Judge issuing his report and recommendation without holding a hearing is clearly erroneous.
2. Certified fact #3 mis-characterizes the Injunction, ECF #38, as "prohibiting any transfer . . . " so is clearly erroneous.
3. Certified fact #5 is clearly erroneous as it somehow states that an Order with an expressed deadline of October 30, 2023, at 5:00 p.m., did not expire at that specified time.
4. Certified fact #6 mis-characterizes "The remaining sale proceeds went to … Yorkville." so is clearly erroneous
5. Certified fact #8 assumes Court approval is required to consummate legally binding sales

contracts, reached before the Injunction was issued, thus is clearly erroneous.

6. The Magistrate Judge's Recommendation, ECF# 85, page 3, lines 12-15, mis-states the content of Mr. Wu's Affidavit, ECF# 72, so is clearly erroneous.

7. The Magistrate Judge's Recommendation, ECF# 85, page 8, Last sentence in the first full paragraph, "… Defendant, despite stipulating to orders prohibiting the transfer of assets or directing it to transfer funds to Plaintiff, repeatedly disregards the Orders." is clearly erroneous.

## Introduction and Factual Background

Due to Defendant's prior in house counsel's actions, Ideanomics guaranteed a debt of its subsidiary Via Motors to Plaintiff Osirius. When Osirius sued Ideanomics, that counsel neglected to answer the Complaint, resulting in the Default Judgement against Ideanomics. ECF# 19.

Ideanomics was able to make significant payments, $1,300,000 to date, to Plaintiff. (see Magistrate Judge's Recommendation referencing ECF#59 and ECF#60, on the last paragraph page 2, and top 2 lines of page 3).

Defendant had contracted for the sale of its U. S Hybrid subsidiary before the Court issued its Injunction Restraining Asset Sales (ECF# 38). Ideanomics' plan, which was voluntarily communicated to Plaintiff, was to satisfy the Judgement at the closing of that sale. (ECF# 60)

That plan was derailed by Osirius filing a Motion for a Receiver. That Motion was granted without Ideanomics having the opportunity to respond.

When Yorkville, holder of the first secured interest in Ideanomics' assets, learned of the Order Granting the receiver motion, it prevented Ideanomics from receiving, let alone transferring, any sale proceeds from the closing of the sale of U. S. Hybrid as well as the sale of Ideanomics' subsidiary in Malaysia. The Malaysia subsidiary sale was also contracted for between the parties prior to the entry of the Injunction.

This case is now a three-party case without the participation of an essential third party, Yorkville.

The following excerpts from ECF# 80, Yorkvilles Objections to the Magistrate Judge's Order make that point clear.

Page 1, 3rd paragraph:

"At all relevant times, Osirius *knew* that Yorkville had a senior perfected security interest in the assets of Ideanomics. Yet Osirius *did not disclose* that senior interest to the Court when it filed motions regarding the disposition of those assets and seeking appointment of a receiver, and the Court was not aware of Yorkville's interest when it signed those orders. Upon learning of the orders, Yorkville retained Michigan counsel and immediately moved to intervene in this matter so it can be heard by the Court, afford due process, and assert its rights in the assets." (emphasis added)

Page 2, Lines 10-14:

"The Magistrate Judge agreed that the Court's Order, ECF No. 60, violated Yorkville's rights: The Order "directing Defendant to sell its subsidiary U.S. Hybrid and give proceeds to Plaintiff … would have circumvented Yorkville's secured interest in U.S. Hybrid." ECF No. 76 (Page ID 1271) (emphasis added)

Page 7, first full paragraph to Page 8, Line 2:

"On October 6, 2023, Osirius filed an Emergency Motion for Injunctive Relief seeking to enjoy the sale of assets in which Yorkville has a senior security interest.  Osirius did not disclose Yorkville's interest to the Court.  On October 10, 2023, the Court entered an injunction order – drafted by Osirius – which fails to recognize Yorkville's superior rights to the collateral (ECF No. 38).  Counsel for Ideanomics entered an appearance on October 17, 2023 (ECF No. 44).   On October 26, 2023, the Court entered the Order Appointing Receiver, in which the Court appointed a receiver "to oversee Defendant's payment of the monies owed to Plaintff [.]" (ECF No. 57, Page ID 740.)  Because neither party had disclosed Yorkville's senior interest to the Court, this Order does not reference Yorkville's interest.  A receiver has not yet been named or appointed.

On October 27, 2023 – despite both Osirius and Ideanomics knowing of Yorkville's senior lien – the Court entered a stipulated order directing Ideanomics to transfer $800,000 to Osirius.  (ECF No. 50.)  On October 31, 2023, the Court entered another stipulated order providing that Ideanomics "may" sell its subsidiary U.S. Hybrid, and transfer $2 million of the sale proceeds to Osirius *in direct violation of Yorkville's security interest*.  (ECF No. 60.)  The U.S. Hybrid purchaser made an earnest money deposit payment of $500,000, which was transferred to Osirius *in direct violation of Yorkville's senior security interest.*"

Yorkville also filed its Motion to Intervene, ECF# 62, denied by the Magistrate Judge, ECF# 76. Decision on Yorkville's Objections to that Magistrate Judge's decision, ECF# 82, are pending before this Court.

Yorkville then sued both Osirius, and its law firm in this case, Miller-Canfield, in New York. Transcript (attached), Page 10, Lines 22-24.

Osirius has failed to present any Affidavits or other evidence rebutting the Memorandum and Affidavit filed by Ideanomics (ECF# 61 and ECF# 72).

The Magistrate Judge treated the Supplemental Motion for Contempt as replacing the initial Motion (ECF# 63), so Defendant will not deal with the arguments in that Motion. Magistrate's Recommendation, ECF# 85, page 4, lines 3-5:

"Given that the objections to discovery were relegated to a footnote, it appears Plaintiff is not pressing contempt for discovery issues."

The hearing that the Magistrate did hold was on the initial Contempt Motion, ECF#63.

## ARGUMENT

That hearing commenced with Ideanomics' counsel clearly stating that he was not prepared to argue the Supplemental Motion, ECF# 73. Transcript Page 3, Line 24 to Page 4 Line 12:

"Before we get to that, let's talk, for just a moment, because there is a supplemental brief that was filed by the Plaintiff, and that is Docket Number 73.

Mr. O'Keefe I'm well aware that your time has not technically run yet for you to respond.  Are you prepared to make argument on that or will you need the time until, I believe, the 5th to respond to that supplemental brief?

MR. O'KEEFE: I need time to respond, your Honor. Actually, I think it is a supplemental brief, but it says supplemental motion. So yeah, I think I have four days left.

THE COURT: Yes.

MR. O'KEEFE: Our preference would be to throw all of this to mediation and try to wrap everything up, but I'm not ready to argue that second motion yet."

Transcript Page 6, Lines 2-5:

THE COURT: "I'm certainly not trying to get you to make argument that you're not prepared to make, and the Court is also prohibited from doing advisory opinions on how it may rule because, of course, what's pending from the plaintiffs."

Transcript Page 7, Lines 16-19:

THE COURT: "Well, I think we'll get to those things. We'll likely have to have another hearing, because if he is not prepared, again, we are a court of equity in trying to do this the right way."

Transcript Page 15, Lines 19-24:

THE COURT: "OK. And as relates to if it is a supplemental motion, that has not been referred to me for determination or at least a report and recommendation, so I will get with Judge Hood and whether or not she is going to refer that or whether or not she is going to handle that herself."

Contrary to all the above indications, the Magistrate Judge simply issued his report and recommendation without the due process a hearing would afford to Defendant. In effect, the Magistrate allowed Osirius to argue its second Motion, at the hearing on its first Motion. All this without giving Defendant Ideanomics a due process opportunity to respond within the legally allowed time.

As shown below, the Magistrate Judge seems to have simply accepted the unsupported and conclusory statements of Osirius' counsel as fact. Statements at a hearing which opened with Ideanomics' counsel's clear statement that he was not prepared to respond to those unsupported and conclusory statements of Osirius' counsel.

The Injunction allegedly violated, per the Magistrate Judge's Recommendation, Page 4, Lines 12-14, "giving sale proceeds to Yorkville," actually states, ECF#3 8, in relevant part, page 3:

" 2A. Defendant Ideanomics, Inc., its officers, agents, servants, employees, attorneys, and those persons in active concern or participation with them who receive notice of this Order, shall not dispose of, conceal, secret, sell, assign, convey, mortgage, or otherwise transfer any Property as hereafter defined (including transfers to itself or to any other person as trustee, guardian or nominee) or any interest therein (legal or equitable) ***not exempt by law*** from application to the satisfaction of the Judgment entered against it, whether now owned or hereafter acquired, until further direction of the Court." (Emphasis added)

Per Affidavit of Mr. Wu, (attached to ECF #72), Yorkville required the Purchaser to send the funds directly to Yorkville. Ideanomics had no say in this as Yorkville was entitled to the funds as **"*exempt by law*"** from application to the satisfaction of the Judgment". Ideanomics never had any funds from the closing to send to Yorkville or Osirius or anyone else.

Objections to that Recommendation, ECF# 76, filed by Yorkville, ECF# 80, are pending before this Court. It is premature of the Magistrate Judge to rely on that Order until those Objections are resolved.

The Magistrate Judge's Recommendation, Page 2, Lines 11-13:

"It is still unclear if this money (from Inobat in October) was forthcoming (ECF No. 36)."

In fact, Plaintiff's Exhibit C, to its own Reply to Response to Contempt Motion, ECF# 81, is a precise breakdown of the disbursement of the October 2023 funds Defendant received from Inobat. That breakdown was previously provided to Plaintiff by Defendant.

Mr. Wu's Affidavit, ECF# 72, speaks for itself. The Affidavit does not state, as the Magistrate Judge's Recommendation and Report says: "that proceeds from U. S. Hybrid had to go to Yorkville because the purchaser was concerned with buying the subsidiary free and clear of all liens and encumbrances." Mr. Wu's Affidavit states that Yorkville had a secured position in those proceeds. Plaintiff has conceded that Yorkville, in fact, has a first secured position in Ideanomics' assets: "While Osirius does not contest that Yorkville has a senior, security interest in the subsidiary (U.S. Hybrid) . . ."

(ECF# 64, Plaintiff's response to Yorkville's intervention motion, Page 18, Lines 12–13)

Defendant complied with all stipulated and non-stipulated Court orders.

Defendant transferred to The Foley-Lardner law firm monies prior receiving the Injunction. Upon request by Defendant for return of $800,000, to pay Plaintiff, Foley-Lardner would not release the $800,000 of Defendant's money that it held in its trust account without a court order, which resulted in ECF# 59.

The factual record, which consists of Defendant's Affidavits mentioned above, in addition to the Affidavit of Compliance (ECF# 59), establish that Defendant has complied with the Court orders regarding its assets.

Contrary to Plaintiff's allegations, Defendant not only complied with the Court's orders, but also was fully cooperative with Plaintiff.   Defendant voluntarily revealed to Plaintiff it's pending sale of its subsidiary U.S. Hybrid.   ECF #60 was drafted by Plaintiff.   Defendant planned, and indeed followed through, to immediately transfer the initial $500,000 earnest money deposit to Plaintiff.

The Magistrate's Recommendation, Page 4, Lines 5-6, states "more asset transfers in violation of Court's Orders. (*Id* at  Page ID. 1281)"

Rather than giving both sides an opportunity for a hearing, the Magistrate accepts unsupported and conclusory allegations in Plaintiff's Motion, ECF# 78, hereinafter, Motion.

The Motion, Page 3, last word, to Page 4, line 1

". . .Ideanomics violated the Post Judgment Order in transferring property without authorization."

This is Plaintiff counsel's conclusory allegation.  There is neither evidence from Osirius showing that Yorkville illegally exercised its security interest by having the Purchaser's funds sent to it or 3rd parties as it directed nor that Ideanomics somehow is in violation of the Injunction based on those actions taken by Yorkville.

The next sentence in the Motion is blatantly false. "Ideanomics retained the funds for itself." Per ECF# 72, Ideanomics neither had any of the proceeds nor directed where any of the proceeds

were to be sent.  The Magistrate Judge's Recommendation appears to simply accepted unsupported assertions of Plaintiff as established face.

Motion, Page 4, Lines 11-12, ". . . given the Company's admission that it violated the Court's October 10, 2023, Order two days prior."  Ideanomics has made no such admission and forthrightly filed an Affidavit disclosing what Yorkville did with the remaining proceeds of the U. S. Hybrid sale, ECF# 72.

> "This court reviews an order by a magistrate judge on a non-dispositive matter to determine whether the decision is 'clearly erroneous or contrary to the law.' Murphy v. Lockhart, 826 F. Supp. 2d 1016, 1026 (E.D. Mich. 2011) (Quoting 28 U.S.C. §636 (b)(1)(A)); see also Fed. R. Civ. P. 72 (a) (stating that "the district judge in the case must consider timely objections and modify or set aside any art of the [magistrate judge's] order that is clearly erroneous or is contrary to law").

*Murphy v. Lockhart*, 826 F. Supp 2d 1016, "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Not only is Osirius lacking in "clear and convincing evidence" it is completely lacking in any evidence.  Osirius' own counsel repeatedly stated at the hearing that he is ignorant of how the U. S. Hybrid sale occurred, Transcript Page 6, Lines 14-15, "- - that they didn't get any money, that's of no moment.

> And I frankly don't understand how that happened."
> And again, Transcript Page 7, Line 7 " . . . I don't know what happened."
> More. Transcript Page 9, Lines 13-15 "I don't know how this transaction took place just a week ago, a week to 14 days ago." And Lines 24 to Page 10, Line 1 " . . . I think that Ideanomics continues to essentially, if you'll excuse the expression, thumb its nose at us and the Court.
> We want to know what is going on."

Ideanomics made clear disclosures, filed with the Court, as well as those required by the SEC for publicly traded companies, on the U. S.Hybrid and Malaysia subsidiary sales.   If Osirius did not understand those clear disclosures, they should have requested something else from Ideanomics rather than making unsubstantiated guesses in open Court.

In effect, by ruling as he did without clarification and giving Defendants an opportunity to present its potion, the Magistrate Judge accepted unsworn guesses and unfounded allegations of Osirius' counsel as established fact, in spite of contradictory Affidavits filed by Ideanomics.

Perhaps the Magistrate Judge should have followed through on scheduling a hearing, as he indicated in his Recommendation, ECF# 85, Page 8, Lines 8-9 ". . .  it is very likely that we will have another hearing as relates to that so that everyone has a fair opportunity to be heard."

The first hearing was on Osirius' initial Contempt Motion, related to Defendant's discovery responses.  As indicated above, the Magistrate treated those allegations as dropped and superseded by the Supplemental Contempt Motion, ECF# 83.

**Conclusion**

The Magistrate Judge's Recommendation should be overturned and an Order Denying the Contempt Motion entered.

Alternatively, the Court could set aside the Magistrate Judge's Recommendation and remand for a hearing on the Contempt Motion, or,

The Court should grant Yorkville's Objections to the Order denying its intervention Motion. This will give all three interested parties a seat at the table and a chance that an agreement be reached, rendering moot the Magistrate Judge's Recommendation on the Contempt Motion.

WHEREFORE, Defendant prays that the Magistrate Judge's Recommendation be reversed and the Contempt Motion be denied.

March 19, 2024

/s/ Kurt O'Keefe
Kurt O'Keefe P30718
Attorney for Defendant
1254 Woodbridge Street
St. Clair Shores MI 48080
313-962-4630
koklaw@gmail.com

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3    Osirius Group, LLC, a Delaware
      limited liability company,
 4
                            Plaintiff,
 5
      -v-                                      Case No. 23-10943
 6
      Ideanomics, Inc., a Nevada
 7    corporation,

 8                          Defendant.
      _____/
 9
                            MOTION HEARING
10                        February 1, 2024

11            BEFORE THE HONORABLE CURTIS IVY, JR.
                  United States Magistrate Judge
12
              United States District Courthouse
13                     600 Church Street
                        Flint, Michigan
14

15    APPEARANCES:

16    FOR THE PLAINTIFF:     GERALD J. GLEESON, II
                             SYDNEY G. ROHLICEK
17                           Miller Canfield Paddock & Stone PLC
                             840 West Long Lake Road, Suite 200
18                           Troy, Michigan  48098

19    FOR THE DEFENDANT:     KURT A. O'KEEFE
                             1254 Woodbridge Street
20                           St. Clair Shores, Michigan  48080

21

22

23    TRANSCRIBED BY:        Rene L. Twedt, CSR-2907, RDR, CRR, CRC
                             www.transcriptorders.com
24
             (Transcriber not present at live proceedings.
25            Transcript produced from digital recording.)
```

|  | | |
|---|---|---|
| 1 | | TABLE OF CONTENTS |
| 2 | **MATTER** | **PAGE** |
| 3 | **MOTION HEARING** | |

**MOTION TO SHOW CAUSE**

Argument by Mr. Gleeson................................ 8
Argument by Mr. O'Keefe............................... 11
Further Argument by Mr. Gleeson....................... 13
Further Argument by Mr. O'Keefe....................... 14
Further Argument by Mr. Gleeson....................... 15
Motion Taken Under Advisement by the Court............ 16

**EXHIBITS**                                    **RECEIVED**

(No Exhibits Offered)

CERTIFICATE OF TRANSCRIBER........................... 16

\*\*REPORTER'S NOTE:  Quotations set forth in the transcript are transcribed verbatim **as read** and, therefore, may not reflect an exact quote from documents or exhibits.

```
 1   Flint, Michigan
 2   February 1, 2024
 3   10:02 a.m.
 4                        *      *      *
 5        THE CLERK:  All rise.  United States District Court
 6   for the Eastern District of Michigan is now in session, the
 7   Honorable Curtis Ivy Jr. presiding.
 8            You may be seated.
 9            Court now calls Case Number 23-10943, Osirius Group
10   versus Ideanomics, Incorporated.
11            Counsel, may I have your appearances for the record,
12   beginning with the plaintiff?
13        MR. GLEESON:  Yes.  Thank you.  Gerald Gleeson on
14   behalf of the plaintiff, Osirius.
15        MS. ROHLICEK:  Good morning.  Sydney Rohlicek also
16   on behalf of plaintiff.
17            THE COURT:  Good morning to both of you.
18        MR. O'KEEFE:  Kurt O'Keefe on behalf of defendant,
19   your Honor.  Happy to say I remembered a suit coat this
20   morning.  My client is with me, Mr. Ben Wu, W-u.
21            THE COURT:  Good morning to both of you as well.
22            So we are here this morning for a hearing as relates
23   to the plaintiff's motion on the docket as Number 63.
24            Before we get to that, let's talk for just a moment,
25   because there is a supplemental brief that was filed by the
```

 1    plaintiff, and that is Docket Number 73.

 2         Mr. O'Keefe, I'm well aware that your time has not

 3    technically run yet for you to respond.  Are you prepared

 4    to make argument on that or are you needing the time until,

 5    I believe, the 5th to respond to that supplemental brief?

 6         MR. O'KEEFE:  I need time to respond, your Honor.

 7    Actually, I think it is a supplemental brief, but it says

 8    supplemental motion.  So yeah, I think I have four days left.

 9         THE COURT:  Yes.

10         MR. O'KEEFE:  Our preference would be to throw all of

11    this to mediation and try to wrap everything up, but I'm not

12    ready to argue that second motion at this point.

13         THE COURT:  And the concern for the Court is, to be

14    quite frank, there is also an order entered by Judge Hood

15    found on the docket at Number 38, which is a post-judgment

16    order granting injunctive relief and prohibiting the transfer

17    of assets.  But it appears that assets may continue to be sold

18    in violation of the period without seeking approval from the

19    Court.  So that's part of the reason we're here today, because

20    I don't want assets to keep being sold that are in violation

21    of Judge Hood's order.

22         MR. O'KEEFE:  I agree, your Honor.  All my retainer

23    agreements say that the clients will follow court orders.

24         I will say that the money, it never went through

25    Ideanomics.  So the memorandum of sale in U.S. Hybrid, that

1    said the purchaser would send the 1.5 million balance directly

2    to Osirius.  And then Yorkville came in and we were -- I was

3    optimistic, at least, that these three would work it out, and

4    we really were in between.

5           What happened is the purchase agreement and the

6    contract was all set.  There was a half a million paid down

7    in U.S. Hybrid, which was turned over to Osirius before

8    Yorkville came in.  And what happened is at the closing the

9    money went directly to Yorkville.  So the asset was sold, but

10   there was no money that went through the hands of Ideanomics.

11          Now, that -- again, I'm not -- I don't have all

12   the details on it, and I don't have the dates and documents.

13   I appreciate the Court's concern.

14          I would have to say at this point we can't sell

15   anything without Yorkville releasing their lien.  We don't

16   intend to, because that doesn't help us with Osirius.

17   I actually was hoping that Yorkville would come in and subject

18   itself to the jurisdiction of the Court and then the Court

19   could say, all right, Yorkville, you get this much, and

20   Osirius, you get that much.

21          But at this point, we're -- we can't sell anything.

22   We're not -- we don't intend to sell things in order to pay

23   Yorkville.  The intent on the U.S. Hybrid sale, as the order

24   in October indicated, was to satisfy the judgment.  So we're --

25   we're kind of on life support at this point.  Again, we would

1    rather have mediation and try to wrap everything up.

2         THE COURT:  I'm certainly not trying to get you to

3    make arguments that you're not prepared to make, and the Court

4    is also prohibited from doing advisory opinions on how it may

5    rule because, of course, what's pending from the plaintiffs.

6         But nonetheless, Mr. Gleeson, do you have anything

7    to add as relates to any of that?

8         MR. GLEESON:  Your Honor, since Mr. O'Keefe

9    volunteered that information, the money doesn't have to come

10   to Ideanomics' bank account.  Ideanomics signed and agreed

11   to a closing where its asset was released to a purchaser.

12   So that, that alone violates Judge Hood's order when they --

13   when they say we agree to sell an asset.  Where the -- that

14   they didn't get the money, that's of no moment.

15        And I don't frankly understand how that happened.

16   And I don't necessarily want to just limit this to the entity,

17   because there are people who make these decisions.  There are

18   people who are clearly aware of the -- of Judge Hood's order,

19   both at Yorkville and at Ideanomics.

20        THE COURT:  Well, it is on the docket for everyone to

21   see in the public.

22        MR. GLEESON:  And everybody was well aware of that,

23   because Yorkville tried to get it set aside, to intervene and

24   get it set aside.  And obviously Ideanomics is here and never

25   moved to set aside.  They just went and sold the asset.  And

```
 1   so for Mr. O'Keefe to stand up and say, gosh, golly, gee, we
 2   just didn't get any money, that doesn't -- that doesn't answer
 3   the inquiry of the Court.
 4          They, Ideanomics, agreed to let go of the asset, and
 5   Yorkville agreed to accept money that it knew was coming from
 6   the sale that was prohibited.  So my view of the world is,
 7   I don't know what happened.  I don't -- I don't want to put
 8   the cart before the horse, but it's clear the sale occurred.
 9   It's clear that people, not just entities, were aware of
10   this and did it anyway.  And that, to me, is contemptuous.
11          And I understand the Court's concern about wanting
12   a response from Ideanomics, but I think the answer that the
13   Court needs to be saying to Mr. O'Keefe today is, who made
14   this decision?  When was this decision made?  Who was aware of
15   the order?
16          THE COURT:  Well, I think we'll get to those things.
17   We'll likely have to have another hearing, because if he is
18   not prepared, again, we are a court of equity in trying to
19   do this the right way.
20          MR. O'KEEFE:  Your Honor, just briefly, I'm not
21   disputing what Mr. Gleeson said.  It's just that the
22   significance would be that we don't have the money to --
23   that was my point, without addressing the actual motion.
24          THE COURT:  We may need to call a recess.  My
25   computer is not working any longer.
```

1          Okay.  There we go.  All right.  It's working.

2          So let's go ahead and have argument on what we are

3   here for today, which is the plaintiff's motion for an order

4   to show cause as to why defendant, Ideanomics, should not be

5   held in contempt, found on the docket at ECF Number 63, and

6   the response is found at ECF Number 66.

7          As I mentioned, as relates to the supplemental brief,

8   it is very likely we will have another hearing as relates to

9   that so that everyone has a fair opportunity to be heard.

10          So with that, let's hear from the plaintiffs, and

11   you may begin when ready.

12          MR. GLEESON:  Thank you, your Honor.  I think the

13   record is fairly clear that Judge Hood ordered that any

14   discovery be responded to within 14 days.

15          We served discovery.  Nothing happened.  Nothing

16   happened.  Nothing happened.  We did not receive the response

17   within 14 days.  We continued to say, where is it?  Mr. Wu was

18   sick.  We agreed to an extension.  But we have never received

19   substantive responses to our discovery.

20          We're seeking -- and I think the discovery speaks for

21   itself.  We want to know where money went, who the creditors

22   are, who is owed money, all of -- all of which is relevant and

23   germane to our pursuit of our debt, our judgment.

24          And they didn't object to it.  They didn't file

25   timely objections.  So I believe under the case law,

1    objections are waived.

2           And what we have in response from Ideanomics today

3    is that, well, we supplied responses.  If the Court has had

4    the opportunity to review those responses, all they are are

5    objections and one email talking about where funds were sent

6    when they came in from the Inovac transaction, which prompted

7    us to seek ECF -- the order at ECF 38 in the first place.

8           And so the Court can see from that one email that

9    monies were being sent all over the place, but not to us to

10   pay our judgment.  And so we have sought discovery and continue

11   to seek discovery, because we still don't have it, as to these

12   areas to determine what was going on that we don't know.

13          And I confessed earlier that I don't know.  I don't

14   know how this transaction took place just a week ago, a week

15   to 14 days ago.  I don't know what happened to money that

16   came in and came out of Ideanomics in the last six months.

17          If the Court looks at the filings that we have

18   submitted from the SEC, because Ideanomics is publicly traded

19   as any stock, it's clear that they are continuing to do

20   business with Yorkville even as close as, I think, two days

21   ago, getting more money from Yorkville under these debenture

22   agreements.  And this cash is coming in and we're not being

23   paid on our judgment.

24          And so basically I think that Ideanomics continues to

25   essentially, if you'll excuse the expression, thumb its nose

Motion Hearing - February 1, 2024

1   at us and at the Court.

2          We want to know what's going on. We want to know and

3   be able to build a case to present to you that says, here's

4   where the money went and here's why we should have it back,

5   that our judgment should be satisfied, where individuals, not

6   companies, but individuals and management at Ideanomics and

7   possibly at Yorkville, if they are involved as well, as to

8   what's going on and is there a purposeful or even, dare I say,

9   fraudulent effort to preclude us from collecting on a judgment

10   that we lawfully acquired.

11          And I guess most of my argument is going to be in

12   rebuttal, because there is an order. There are discovery

13   requests that were not answered. They were supplied to you at

14   the time of the response to this motion. They were deficient.

15   There were objections that were waived. And we stand here

16   today weeks and months later with still no information about

17   what's going on at that company.

18          I think this information is appropriate. The Court

19   should -- because the objections are waived, I don't think

20   the objections should even be heard today, but I think that

21   information should be supplied and supplied quickly.

22          I'm happy to report to the Court that Yorkville

23   has sued my law firm in New York and has sued my client in

24   New York, not Ideanomics, suspiciously. And so this is

25   continuing, this behavior of just preventing Osirius from

 1   collecting a lawful judgment.

 2          And they ought to answer the discovery and they ought

 3   to do it within seven days, because they have had plenty of

 4   time to gather the information in advance of our motion that

 5   you're hearing today, in advance of this hearing.  They have

 6   had plenty of time to do this.  They haven't.  And it's time

 7   that the Court hold them in contempt, give them seven days,

 8   and give whatever sanction is necessary so that we can get

 9   the information we need to go and collect their judgment.

10          Thank you.

11          THE COURT:  Thank you.

12          Mr. O'Keefe, on behalf of Ideanomics, the defendant.

13          MR. O'KEEFE:  Thank you, your Honor.

14          Really, that's the secondary motion that they are

15   saying that the discovery was incomplete and they want a

16   motion to compel and they want more specific answers.

17          The specific motion was filed before any answers were

18   filed and, again, we didn't know until Sunday, when the Court

19   denied the intervention order, whether the order that the

20   receiver, which included the discovery provisions, would be

21   set aside.

22          So if we're going ahead of the game in terms of

23   complying, in terms of the contempt for not doing something,

24   purging of the contempt is to do it.  So having been done,

25   it doesn't satisfy Mr. Gleeson.  I'm not arguing whether it

1    should or not at this point.  I'm just saying if that's where

2    we want to go with it, then we have some kind of a timeline.

3         Mr. Wu's time, he would be -- he is my contact with

4    Ideanomics.  I don't know that we could come up with this

5    stuff in seven days.  He is still trying to resolve the other

6    issues of Yorkville.

7         And as far as thumbing the nose, the email disclosing

8    the funds that went out, that happened before the order was

9    received, the restraining order received, and disclosing the

10   assets, which was laid out in the pleadings in the response we

11   were allowed to file to the motion to shorten the time on the

12   receiver motion, so that's what happened with those funds.

13        As far as thumbing our nose, the 800,000 payment

14   came -- as I stated last time, there was a million dollar

15   retainer paid to the law firm in anticipation of a possible

16   Chapter 11 and Ideanomics clawed back that 800,000 and turned

17   it over.  That's where the 800,000 payment came.

18        They knew about the U.S. Hybrid sale.  We thought we

19   were going to close by October 31st pursuant to the order that

20   was there.  We -- but that -- (inaudible) really going to be

21   paid from that.

22        And then Yorkville came in and, again, I was

23   optimistic that the three parties would agree on a way for

24   all of them to be paid, but it wasn't.

25        So if we're jumping ahead to a motion to compel more

```
 1    specific answers and responses, we would need more than seven
 2    days.  I think we would need 21 days to comply.  It's not
 3    Ideanomics' intention, certainly on my advice, to be ignoring
 4    any Court orders or thumbing the nose at the Court.
 5           As I said, we're basically in a life support
 6    situation with the order appointing a receiver, which has
 7    probably knocked half the stock price from $2 a share to $1
 8    a share already.  And with Yorkville and Osirius squeezing us,
 9    we have become less able to produce money or sell anything in
10    order to satisfy the judgments.
11           THE COURT:  Mr. Gleeson?
12           MR. GLEESON:  I want to be clear that the plaintiff
13    isn't squeezing anybody at all.  And I'm a little -- I don't
14    know what to say I am, because they come in today after weeks
15    and months of never responding to discovery, then they respond
16    to discovery with objections which are waived, and then they
17    say essentially to the Court, well, we really don't have to
18    answer them until they file a motion for more complete answers.
19           And that, to me, just kind of speaks to the bad faith
20    that's going on here between law firms being sued in New York
21    for no reason and everybody just not wanting to provide the
22    information to us to show the Court exactly what's going on
23    here.  This is -- this is -- if it's not obstructionist, I
24    don't know what is, because they -- they have not answered.
25    When they do answer only upon our motion, they file objections
```

```
 1    that are already waived.  And now they have the audacity to
 2    come in here and say, well, even though we didn't answer, even
 3    though we objected when we weren't supposed to, plaintiff has
 4    got to file a new motion for more complete answers and maybe
 5    we'll get to it then.
 6           And that -- this is just -- it is -- it is -- I'm
 7    offended by this, Judge, personally.  And I don't expect the
 8    Court to be, because you're a neutral arbiter, but this has to
 9    end.  We need the information.  We need it now.  And there is
10    no reason to give him any more time or allow excuses about,
11    we get -- we have to have another motion before we can really
12    figure it out.  They sat on their hands.  They continue to sit
13    on their hands.  They are doing it intentionally.  We just
14    want the discovery, your Honor.  Thank you very much.
15           THE COURT:  Thank you.
16           MR. O'KEEFE:  Your Honor, if I may, I am just going
17    by Federal Rule 37 in terms of process of objecting to the
18    answers to discovery.  And we're not thumbing our nose.  We
19    have been trying to -- we pulled 800,000 back that had gone
20    to a different entity.  We thought we had it worked out with
21    U.S. Hybrid.
22           Osirius has been advised through the process of that
23    sale.  We're in a position there where the purchase agreement
24    contracts were already made.  They had already paid money.  So
25    if it doesn't close, then they come in and there is another
```

1    lawsuit.

2          We don't have anything to do with the lawsuit in

3    New York.  I haven't seen it.  I don't know what it is.

4    I don't expect Mr. Gleeson to be happy about it, but

5    certainly, we have no responsibility for it.

6          THE COURT:  And Mr. Gleeson, my one question for

7    you is, as relates to your filing, being Number 73, is that

8    supposed to be a supplemental motion -- or excuse me -- a

9    motion or supplemental brief?  Just want to make sure we're

10   clear on what that is.

11         MR. GLEESON:  Your Honor, they were -- they were new

12   facts, new events, so I would like to say it's a supplemental

13   brief, but I think we're asking for additional relief.  So

14   in fairness to Ideanomics, I have to say it's a supplemental

15   motion, because we're asking likely for additional relief

16   there, because it is a new event, this sale that everybody

17   has admitted to.  So I think it probably would qualify as a

18   supplemental motion.

19         THE COURT:  Okay.  And as relates to if it is a

20   supplemental motion, that has not been referred to me for

21   determination or at least a report and recommendation, so

22   I will get with Judge Hood and whether or not she is going

23   to refer that or whether or not she is going to handle that

24   herself.

25         MR. GLEESON:  Thank you very much, your Honor.

```
 1           THE COURT:  So as it relates to what is before the
 2   Court at Docket Number 63, Mr. Gleeson, do you have anything
 3   additional?
 4           MR. GLEESON:  No, your Honor.  Thank you.
 5           THE COURT:  Mr. O'Keefe?
 6           MR. O'KEEFE:  No, your Honor.
 7           I don't know if the docket referred to it.  I thought
 8   it was a brief until I read it this morning.  So it's titled
 9   "Supplemental Motion."  It may have been docketed wrong, but
10   it is a motion.  Thank you.
11           THE COURT:  Fair enough.  All right.  Thank you all.
12   Have a great day.
13           MR. O'KEEFE:  Thank you, your Honor.
14           THE CLERK:  All rise.  Court is in recess.
15           (Proceedings adjourned at 10:21 a.m.)
16                       *      *      *
17
18                 CERTIFICATE OF TRANSCRIBER
19
20       I certify that the foregoing is a correct transcription
21   from the official electronic sound recording from the record of
22   proceedings in the above-entitled matter.
23
24   _____        February 9, 2024
          s/ Rene L. Twedt
     RENE L. TWEDT, CSR-2907, RDR, CRR, CRC      Date
25       Federal Official Court Reporter
```