IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OSIRIUS GROUP, LLC, a Delaware limited liability company,

    Plaintiff,

v.

IDEANOMICS, INC., a Nevada Corporation,

    Defendant,

YA II PN, LTD,

    Proposed Intervenor.

Case No. 23-cv-10943

Hon. Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**PLAINTIFF'S RESPONSE TO DEFENDANT IDEANOMICS, INC'S OBJECTIONS [ECF NO. 86] TO MAGISTRATE JUDGE IVY'S REPORT AND RECOMMENDATION THAT IT BE ORDERED TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT [ECF NO. 85]**

## **ISSUES PRESENTED**

1.    After concluding that Defendant Ideanomics has not taken reasonable steps to comply with the Court's October 10, 2023 Order prohibiting the transfer of assets and has repeatedly disregarded other Court Orders, Magistrate Judge Ivy issued a Report and Recommendation that Ideanomics be ordered to appear before this Court and show cause why it should not be held in civil contempt. Should the Court adopt Magistrate Judge Ivy's Report and Recommendation when it accurately reflects the record, complies with the law, and is not clearly erroneous?

    Plaintiff answers:  Yes.

    Defendant answers: No.

Plaintiff Osirius Group, LLC ("Osirius"), by and through its attorneys, Miller, Canfield, Paddock and Stone, PLC, and pursuant to LR 72.1(d)(3), submits the following Response to Defendant Ideanomics, Inc.'s ("Ideanomics") Objections to Magistrate Judge Ivy's March 5, 2024 Report and Recommendation.

## **INTRODUCTION**

The record is clear and undisputed – on October 10, 2023 this Court entered an Order prohibiting Ideanomics from transferring "any Property … or any legal interest therein … not exempt by law … whether now owned or hereafter acquired, until further direction of the Court." (ECF No. 38, PageID.544). Yet Ideanomics did not seek permission from the Court prior to selling two of its subsidiaries in January 2024 for over $5 million – the profits of which went to Yorkville Advisors ("Yorkville") while its Motion to Intervene was still pending. Nor did Ideanomics seek permission from the Court before selling over $4.5 million worth of convertible debentures to Yorkville since the new year, continuing the "loan to own" investment scheme that Ideanomics asserts immunizes it from any and all collection efforts. Without the benefit of any of the post-judgment discovery ordered by this Court, these are just the prohibited transactions known to Osirius through Ideanomics' public filings and the sworn testimony of its in-house counsel. Nevertheless, these documents alone provide clear and convincing evidence confirming the Magistrate Judge's conclusion that Ideanomics "repeatedly

disregards" this Court's Orders, warranting a show cause hearing and a finding of contempt. (Report and Recommendation, ECF No. 85, PageID.1420).

## FACTUAL BACKGROUND

### A. Procedural History

After it refused to enter an appearance, this Court entered a default judgment against Ideanomics on August 22, 2023. (ECF No. 19). Subsequent garnishment attempts were unsuccessful. Based on the representation of an Ideanomics executive that the Company had chosen to pay other debts ahead of Osirus[1] and was set to receive another $3 million[2] (enough to satisfy the growing $2,668,467.30 judgement) in short order, Osirius moved for, and obtained, immediate injunctive relief prohibiting Ideanomics from transferring any assets. Specifically, the Order provided that Ideanomics:

> shall not dispose of, conceal, secret, sell, assign convey, mortgage, or otherwise transfer Property … or any interest therein (legal or equitable) not exempt from application to the satisfaction of the Judgment entered against it, whether now owned or hereafter acquired, until further direction of the Court (ECF No. 38, PageID.544).

---

[1] *See* Creditor's Examination testimony of Chief Financial Officer Scott Morrison, ECF No. 43-3, PageID.583 (Q: "The $1 million that was received yesterday or today [9/29/2023], that money is no longer in Ideanomics bank account; is that right? A: "Right.").

[2] *Id.* at PageID.584 ("We have another payment of 3.2 million coming in October.")

3

Apparently motivated by the Court's further Order approving a receiver, Ideanomics transferred $800,000[3] to Osirius in partial satisfaction of the judgment after the Court authorized the transaction by way of Stipulated Order entered on October 27, 2023. (ECF No. 59). A few days later the Court again authorized Ideanomics to sell its assets (a subsidiary, U.S. Hybrid) and transfer the proceeds to Osirius in full satisfaction of the judgment. (ECF No. 60). Osirius only received a partial payment in the amount of $500,000 on November 7, 2023.

On November 28, 2023, Yorkville Advisors filed a Motion to Intervene asserting a perfected secured interest in U.S. Hybrid and "substantially all assets" of Ideanomics. (ECF No. 62, PageID.761). Osirius objected, culminating in substantial motion practice. Unbeknownst to Osirius, however, Ideanomics had already rendered its own opinion weeks prior, completing the $5 million sale of U.S. Hybrid on January 11, 2024 which resulted in $3,850,000 to Yorkville. **Exhibit 1**, SEC Form 8-K Filing (January 16, 2024), available at:

---

[3] Ideanomics had previously given a million dollars to a bankruptcy law firm, but "got 800,000 of it back." At the hearing on the Motion to Intervene, counsel for Ideanomics stated that the Company "clawed back $800,000 for the 800,000 payable. That wasn't a result of Osirius." ECF No.74, PageID.1248. *See also* (Defendant's Objections to R&R, ECF No. 86, PageID.1427) ("Upon request by Defendant for return of $800,000, to pay Plaintiff, Foley-Lardner would not release the $800,000 of Defendant's money that it held in its trust account without a court order, which resulted in ECF# 59")

4

https://www.sec.gov/ix?doc=/Archives/edgar/data/0000837852/000162828024001304/idex-20240116.htm. Ideanomics did not disclose this sale to Osirius or the Court until five days later. *See* (Affidavit of Benjamin Wu, ECF No. 72). Thus, Ideanomics' self-help rendered the issue moot for purposes of the January 23, 2024 hearing – a point explicitly noted in Magistrate Judge Ivy's eventual Order denying Yorkville's Motion to Intervene. (ECF No. 76, PageID.1273) ("At this point, it is hard to believe that Yorkville's interests will not be adequately protected by Defendant considering Defendant has, more than once, disregarded express Court Orders not to sell assets without Court approval and gave U.S. Hybrid proceeds from the sale of assets to Yorkville and to the detriment of Plaintiff").

Indeed, January proved to be a particularly busy month for Ideanomics. In addition to selling U.S. Hybrid in violation of this Court's Order prohibiting the sale of assets, the Company: sold another subsidiary, Tree Technology, on January 2, 2024 and Yorkville collected the purchaser's $400,000 deposit;[4] entered a standby equity purchase agreement allowing Yorkville to purchase up to 2,500,000 shares of common stock on January 10, 2024;[5] sold $750,000 of secured convertible

---

[4] **Exhibit 1**, SEC Form 8-K Filing (Jan. 16, 2024).

[5] *Id.*

5

41981043.1/155037.00003

debentures to Yorkville on January 25, 2024;[6] and sold $1,500,000 of secured convertible debentures to Yorkville on January 30, 2024.[7] Ideanomics sold another $1,500,000 of secured convertible debentures to Yorkville on February 29, 2024[8] and another $898,032 as recently as March 14, 2024.[9] Curiously, although Yorkville was undoubtedly aware of the Court's October 10, 2023, given its request for the Court to set it aside, and despite its accusations that the undersigned attorney is "unethical" and "immoral," the New York hedge fund continues to purchase assets from Ideanomics in knowing violation of an federal court order.[10]

---

[6] **Exhibit 2**, SEC Form 8-K Filing (Jan. 25, 2024), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0000837852/000162828024002295/idex-20240125.htm.

[7] **Exhibit 3**, SEC Form 8-K Filing (Jan. 30, 2024), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0000837852/000162828024002646/idex-20240130.htm.

[8] **Exhibit 4**, SEC Form 8-K Filing (Feb. 29, 2024), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/837852/000162828024008040/idex-20240229.htm.

[9] **Exhibit 5**, SEC Form 8-K Filing (Mar. 14, 2024), available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/837852/000162828024011318/idex-20240314.htm.

[10] Yorkville has not raised such claims in this Court, but has done so in the state of New York, filing suit against Osirius and Miller Canfield for conversion, tortious interference, aiding and abetting and unjust enrichment, forcing both entities to retain counsel to dismiss these abusive claims. *YA II PN, Ltd. v. Osirius Group, LLC and Miller, Canfield, Paddock and Stone, P.L.C.*, Supreme Court of the State of New York, County of New York, Index No. 650547/2024 (Masley, J.).

### B. Magistrate Judge Ivy Finds Clear and Convincing Evidence that Ideanomics Violated Court Orders.

In response to Osirius' Motion for Show Cause Ideanomics submitted a two page argument in opposition asserting, without the support of a single authority, that it was in compliance with the Injunction because both U.S. Hybrid and Tree Technology were assets exempt by law from application to the satisfaction of the pending default judgment. (ECF No. 78, PageID.1283). First, with regard to U.S. Hybrid, Ideanomics suggested that Yorkville's "first secured position in Ideanomics' assets" transformed any encumbered asset (including U.S. Hybrid) into one "exempt by law from an unsecured judgment creditor, and, from a judgment[.]" *Id.* Second, with regard to both subsidiaries, Ideanomics claimed that it was bound "[b]y law" to "complete the legal sales contracts at issue" and would have "given both purchasers grounds to sue [] for specific performance" if they failed to close on the deals. *Id.* at PageID.1284. Notably, in its response, Ideanomics failed to address it decision to enter a standby equity purchase agreement with Yorkville for 2,500,000 shares of stock.[11]

---

but suffers from the same problem as Ideanomics – a complete dearth of supporting case law for its imaginative claims.

[11] At the time of filing (January 22, 2024) of Osirius Motion for Show Cause, only Ideanomics' January 16, 2024 SEC Form 8-K had been filed. **Exhibit 1.** However, Ideanomics subsequent filings clearly demonstrate that the Company only continued to sell additional stock to Yorkville.

Opting to decide the Motion on the briefing, Magistrate Judge Ivy issued a Report and Recommendation on March 5, 2024, finding that Ideanomics "has not satisfied the judgment and continues to sell or transfer assets without Court approval, against Court Orders" and further that the Company had not taken "reasonable steps to comply with the Court's Orders." (ECF No. 85, PageID.1416, 1420). Ultimately recommending that Ideanomics be ordered to appear before this Court and held in civil contempt if it cannot satisfactorily show cause as to why it has not complied with the Orders. (*Id.* at PageID.1420).

## **ARGUMENT**

Nondispositive matters referred to, and resolved by, a Magistrate Judge are reviewed under the "clearly erroneous or is contrary to law" standard. Fed. R. Civ. P. 72(a). While Defendant fails to appreciate this distinction, "[t]he 'clearly erroneous' standard applies only to the magistrate judge's factual findings[.]" *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014). The Sixth Circuit has instructed that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008). This standard does not contemplate reversal just because the reviewing court would have decided the matter differently. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)

8

("Where there are two permissible views of the evidence … [the] choice between them cannot be clearly erroneous"). By contrast, a magistrate judge's "legal conclusions are reviewed under the plenary 'contrary to law' standard." *Sedgwick Ins.*, 47 F. Supp. 3d at 538. A legal conclusion is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure*.*" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citations omitted).

"In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." *McClean v. Ogemaw Cnty.*, 642 F. Supp. 3d 616, 618 (E.D. Mich. 2022) (citing 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3069 (3d Ed. 2022)).

Although raising seven separate objections, Ideanomics merely repeats the same arguments which failed to persuade Magistrate Judge Ivy or excuse its repeated and numerous violations of the October 10, 2023 Injunction.

**Response to Objection No. 1:**

Magistrate Judge Ivy did not act contrary to law in exercising his discretion to decide Plaintiff's Motion for Show Cause on the papers without a hearing. Ideanomics argues otherwise, noting the absence of oral argument conducted on the instant motion (because, as Ideanomics counsel admits himself, he was "clearly …

not prepared to argue" it during a prior hearing) and asserting that the "Magistrate Judge simply issued his report and recommendation without the due process a hearing would afford to Defendant." (ECF No. 82, PageID.1426). As a preliminary matter, Ideanomics does not identify how it was robbed of "a due process opportunity to respond" to the instant Motion, given that the Magistrate Judge did not entertain oral argument specifically in order to allow Ideanomics the time it was entitled under the local rules to draft and submit a written response in opposition – which it did.[12]

When legal arguments are sufficiently explored in the parties' briefing, courts in this district frequently dispense with oral argument pursuant to Local Rule 7.1(f)(2). *See, e.g.*, *Ashh, Inc. v. All About It, LLC*, 475 F. Supp. 3d 676, 677 (E.D. Mich. 2020) (Edmunds, J.); *Fields v. Ashford*, 636 F. Supp. 3d 772, 774 n. 1 (E.D. Mich. 2022) (Leitman, J.). In its Response in Opposition to Osirius' Motion for Show Cause (and indeed in its objection to the Report and Recommendation), Ideanomics raised no issue which would require the Magistrate Judge to hold a hearing in order to, for example, weigh credibility of a witness, instead only raising what purport to be legal arguments regarding whether the assets at issue where

---

[12] *See* (ECF No. 79, PageID.1297) (Q: "Mr. O'Keefe, I'm well aware that your time has not technically run yet for you to respond. Are you prepared to make argument on that or are you needing the time until, I believe, the 5th to respond to that supplemental brief?" A: "I need time to respond, your honor.").

10

exempt under law. Moreover, Ideanomics provides no authority for its proposition that it was entitled as a matter of constitutional due process to a hearing. *See, e.g.*, *Nayak v. Voith Turbo, Inc.*, 2015 WL 1605576, at *7 (M.D. Pa. Apr. 9, 2015) (denying motion for oral argument, noting that the Court was unable to locate any "authority for the proposition that declining to hold a hearing on Plaintiff's motion to dismiss is violative of due process" and reiterating that oral argument is granted as a matter of discretion).

This Court should overrule Ideanomics' Objection No. 1.

**Response to Objection No. 2:**

In taking issue with the Magistrate Judge's shorthand reference to the Court's October 10, 2023 Order as one "prohibiting any transfer[,]" Ideanomics fails to show that the Report and Recommendation is contrary to law. Magistrate Judge Ivy's continuous citation to the record clearly demonstrates consideration of the Order as entered in its entirety, including the provision which provides that assets "exempt from application to the satisfaction of the Judgment entered against it, whether now owned or hereafter acquired, until further direction of the Court." (ECF No. 38, PageID.544). However, because Ideanomics' failed to provide even a single citation to support its various theories (addressed below) as to why the sold assets were exempt, Magistrate Judge Ivy was under no obligation to attempt to discern the

11

merits of such claims. *See Mitcham v. Detroit,* 355 Mich. 182, 203(1959) ("It is not enough for [a party] in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position").

Even if the Court were to engage in the exercise, however, it is clear that a secured interest does not qualify as an asset exempt at a matter of law. Although Osirius acknowledges that its default judgment is still junior to Yorkville's perfected security interest, Ideanomics identifies no authority suggesting that property encumbered by a security interest is *exempt from judgment* under Michigan law and thereby excluded from the contours of the Court's October 10, 2023 Order.[13]

In fact, Judge Michelson previously found this argument to be without merit in *Cent. States, Se. v. John R. Concrete & Supply Co.,* finding instead that "Michigan law appear[ed] to be directly contrary to Defendants' position that if a secured creditor has priority in certain corporate assets, those assets should be deemed exempt from the judgment." 2014 WL 4978660 at *5. In *Central States*, a post-judgment order prohibited the judgment debtor from "alienating any of the

---

[13] *Cent. States, Se. v. John R. Concrete & Supply Co.*, 2014 WL 4978660, at *6 (E.D. Mich. Oct. 6, 2014) (recognizing that "simply because assets [subject to a perfected security interest] are not exempt from judgment" under Michigan law, does not mean that a judgment creditor seeking to freeze said property pursuant to MCL § 600.6104 ultimately has "priority over [those interests of a secured creditor]").

41981043.1/155037.00003

companies' property 'not exempt by law' " pursuant to MCL § 600.6104(5). *Id.* at *1. The debtor subsequently moved the court for clarification of the order as to "which of their assets [we]re exempt from the restraining order" and "an explanation of the Order's applicability to Defendants' secured creditors." *Id.* at *3. After noting an absence of case law or statutory authority holding otherwise, the court concluded that "Michigan law appears to be directly contrary to [the] position that if a secured creditor has priority in certain corporate assets, those assets should be deemed exempt from the judgment." *Id.* at *5. For the debtor, this meant that corporate assets "in which creditors [held] a security interest" were not "shielded from collection" under MCL § 600.6104 – the very statute which the Court relied on to enjoin Ideanomics from transferring or selling assets on October 10, 2023. *See* ECF No. 38 (citing MCL § 600.6104(2)).

This Court should overrule Ideanomics' Objection No. 2.

**Response to Objection No. 3:**

Ideanomics asserts that it is not liable for violation of ECF No. 60, which granted temporary relief from the Injunction to allow the Company to sell U.S. Hybrid and transfer a portion of the proceeds to Osirius in full satisfaction of the judgment, because the Order expired at 5:00pm given the explicit deadline listed for completion of the wire transfer. Magistrate Judge Ivy correctly dismissed this

13

meritless claim, noting that said "Order does not state that it expires on that date and at that time such that Defendant would be free to do with U.S. Hybrid whatever it pleased." (ECF No. 85, PageID.1418). Regardless, the distinction is one without a difference given that Ideanomics did not have permission to sell U.S. Hybrid as required by the Court's October 10, 2023 Order, and in so doing proceeded at its own peril.

This Court should overrule Ideanomics' Objection No. 3.

**Response to Objection No. 4:**

Ideanomics seems to suggest that because it received no cash in hand following the completion of the sale of both U.S. Hybrid and Tree Technology, that it somehow absolves it of any liability for authorizing the sale of said assets in violation of the Injunction. *See* (ECF No. 86, PageID.1427-28) ("Ideanomics neither had any of the proceeds nor directed where any of the proceeds were to be sent"). However, Ideanomics' arguments fails to recognize the fundamental proposition that Magistrate Judge Ivy's conclusion was premised on – Ideanomics still authorized the sale of its assets, which the October 10, 2023 Order clearly prohibits. The specific entity which lined its pockets thereafter with the proceeds is inapposite. This

argument fails to demonstrate that the Report and Recommendation is clearly erroneous.

This Court should therefore overrule Ideanomics Objection No. 4.

**Response to Objection No. 5:**

Ideanomics' further argues that the various sales were exempt from execution, as a matter of law, because of contractual agreements. Specifically, "[b]y law, Ideanomics was bound to complete the legal sales contracts at issue, the sales of U.S. Hybrid and Tree, which were entered into prior to ECF #83[.]" ECF No. 78, PageID.1283. The Company supposedly would have faced "severe penalties" had it not gone through with the prohibited sales. *Id.* at PageID.1281. Again, Ideanomics provides no citation, authority, or case law confirming that potential penalties under contract justify violation of a federal court order or, alternatively, that assets which are the subject of a contract (let alone one that has yet to be executed) are exempt from the Court's order here. As such, Ideanomics fails to demonstrate that Magistrate Judge Ivy erred contrary to law when he concluded that Ideanomics violated the October 10, 2023 Order by selling its subsidiaries Tree Technology and U.S. Hybrid. *See, e.g.*, *Thompson v. Ohio State University*, 2014 WL 3341333, at *3 (S.D. Ohio July 8, 2014) (finding that "[a]bsent any binding precedent that is directly analogous and contradictory to the Order, Plaintiff's discussion of similar cases does

15

not render the Order clearly erroneous or contrary to law"); *Richards v. F.B.I.*, 2013 WL 3215524, at *1 (W.D. Mich. June 24, 2013) ("Plaintiff's arguments, made without reference to authority, do not demonstrate any legal error in the Magistrate Judge's conclusion").

Ideanomics objection No. 5 should be overruled.

**<u>Response to Objection No. 6:</u>**

In the Background section of his Report and Recommendation, Magistrate Judge Ivy described the affidavit of Ideanomics' in house counsel, Benjamin Wu, in which he gave sworn testimony regarding the sale of U.S. Hybrid. The Magistrate Judge summarized said testimony as follows: "He stated that proceeds from U.S. Hybrid had to go to Yorkville because the purchaser was concerned with buying the subsidiary free and clear of all liens and encumbrances." (ECF No. 85, PageID.1415). Ideanomics objected to this recitation, claiming it was a clearly erroneous "mis-statement" only to later acknowledge in its own brief that "[p]er the Affidavit of Mr. Wu … Yorkville required the Purchaser to send the funds directly to Yorkville." *See also* (Affidavit of Benjamin Wu, ECF No. 72) ("By the end of December 2023, Purchaser was still not comfortable with the sale given the Court's order and Yorkville's secured position in all of Ideanomics' assets"). The Magistrate Judge's summary of Mr. Wu's affidavit was not clearly erroneous.

Ideanomics objection No. 6 should be overruled.

**Response to Objection No. 7:**

Ideanomics contends that the Magistrate Judge's ultimate conclusion that the company repeatedly disregards this Court's Order was clearly erroneous. However, for the reasons already described above, each and every one of Ideanomics' theories as to why it is not culpable for its blatant and continued violations of this Court's October 10, 2023 Order fall far short. By its own admission, Ideanomics has sold assets in violation of the Injunction no less than six times. What can be more clear and convincing than a parties' own public filings and sworn testimony?

Ideanomics objection No. 7 should be overruled.

## CONCLUSION

Ideanomics has failed to prove that Magistrate Judge Ivy's Report and Recommendation is clearly erroneous or contrary to law. The Court should thereover overrule its objections and adopt the Report and Recommendation in its entirety. Moreover, as demonstrated by the record, while Ideanomics violated the order, the company did so based on the decision-making of its management. Not only should Ideanomics be held in contempt, so too should the managers who made the knowing decisions that led to the violations of the Court order.

                                                Respectfully submitted,

                                                By:   s/ Gerald J. Gleeson, II
                                                            Gerald J. Gleeson II (P53568)
                                                            Sydney G. Rohlicek (P85655)
                                                            Miller, Canfield, Paddock, and Stone, PLC
                                                            840 W. Long Lake Rd.
                                                            Troy, MI 48098
                                                            (248)879-2000
                                                            gleeson@millercanfield.com
                                                            rohlicek@millercanfield.com
                                                            *Attorneys for Plaintiff*

Dated: April 2, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2024, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to all counsel of record.

                                Respectfully submitted,

                                By:   s/ Gerald J. Gleeson, II
                                        Gerald J. Gleeson II (P53568)
                                        Sydney G. Rohlicek (P85655)
                                        Miller, Canfield, Paddock, and Stone, PLC
                                        840 W. Long Lake Rd.
                                        Troy, MI 48098
                                        (248)879-2000
                                        gleeson@millercanfield.com
                                        rohlicek@millercanfield.com
                                        *Attorneys for Plaintiff*